# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Daniel Raymond PHELPS<br>(DOB: XX/XX/1968)<br><br>*Defendant(s)* | Case No. 24-M-468 (SCD) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  beginning 06/03/2024 - present  in the county of  Waukesha & various counties  in the
 Eastern  District of  Wisconsin , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Unlawful possession of Machinegun |
| 18 U.S.C. § 922(a)(1) | Dealing in firearms without a License |
| 26 U.S.C. §§ 5861(e) and 5845(a) and(b) | Unlawful transfer of a firearm, machinegun, and short-barreled rifle |
| 26 U.S.C. §§ 5681(f) and 5845(a) and (b) | Unlawful making of a firearm, machinegun, and short-barreled rifle |

This criminal complaint is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Matthew Bammert, Special Agent - ATF
*Printed name and title*

Sworn via telephone; transmitted via email
pursuant to Fed. R. Crim. 4.1

Date: 8-9-24

*Judge's signature*

City and state: Milwaukee, Wisconsin     Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

CLERK'S OFFICE
A TRUE COPY
Aug 09, 2024
/s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT & ARREST WARRANT

Matthew Bammert, being first duly sworn, states that:

## I. Agent Background

1) I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since December 2023. My duties with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, as well as laws including distribution and possession with intent to distribute controlled substances and conspiracy to do so (Title 21, United States Code, Sections 841 and 846) as well as federal firearms laws, and money laundering laws (Title 18, United States Code, Sections 922 and 924 and Title 18, United States Code, Sections 1956 and 1957).

2) I have been employed in law enforcement for 6 years. Upon joining ATF in December 2023, I completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia) and ATF's National Academy. The training included courses on constitutional law such as search and seizure, and conducting investigations through searches, arrests, interviews, surveillance, and evidence collection. The training also included firearms trafficking, drug trafficking, and firearms recognition. It covered an in depth break down of the requirements to possess, manufacture, deal, sell, and transfer National Firearms Act ("NFA") weapons and requirements for selling, dealing, and manufacturing firearms. Prior to joining ATF, I was a sworn Police Officer with the United States Secret Service Uniformed Division from September 2018 to December 2023. I completed approximately 29 weeks of training at the Federal

1

Law Enforcement Training Center (Artesia, New Mexico) and the James J. Rowley Training Center. The training included courses on constitutional law such as search and seizure, conducting investigations through searches, arrests, interviews, surveillance, and evidence collection and police procedures.

3) The United States, including the ATF, is conducting a criminal investigation of Daniel Raymond PHELPS (DOB: XX/XX/1968) regarding possible violations of, among other crimes, 18 U.S.C. §§ 922(o) (Unlawful possession of Machinegun) and 922(a)(1) (Dealing in firearms without a License) and 26 U.S.C. §§ 5861(e) and 5845(a) and (b) (unlawful transfer of a firearm, machinegun, and short-barreled rifle) and 5681(f) and 5845(a) and (b) (unlawful making of a firearm, machinegun, and short-barreled rifle) beginning in June 2024, and continuing until the present, in the Eastern District of Wisconsin and elsewhere.

## II. Basis for Information in Affidavit

The information contained in this affidavit is based upon my personal knowledge and investigation, and information supplied to me by other law enforcement officers including other ATF Special Agents, all of whom I believe to be truthful and reliable. Based on my investigation as detailed below, occurring in the Eastern District of Wisconsin and elsewhere, I have probable cause to believe the following regarding Daniel Raymond Phelps (DOB: XX/XX/1968).

## III. Facts Establishing Probable Cause

4) Based upon my investigation, as described in detail below, between approximately June 3, 2024, and continuing to the present time, Phelps has been acting as a firearms dealer in that he manufactures and sells firearms, and resells premade firearms, without the appropriate licenses, willfully and for profit. Further, these instances include both the unlawful manufacturing and

2

distribution of short-barreled rifles and machineguns. I believe that Phelps knowingly possessed a machinegun on July 10, 2024, and on July 31, 2024.

## First Undercover Buy – June 25, 2024

5) On June 3, 2024, an ATF agent working undercover ("UC") sent a text message to Phelps, asking about two firearms Phelps had listed for sale on the website gunswisconsin.com: a 6.5 Grendel AR style rifle for $1,100; and a 12-gauge shotgun for $280. Through their text message communications, Phelps agreed to sell both firearms, at the price listed on the website. Phelps agreed to meet the UC at a Walmart located at 2863 Heritage Drive, Delafield WI, on June 25, 2024, around 1:00 P.M. This location is in the State and Eastern District of Wisconsin.

6) At the meeting, Phelps sold the UC both firearms listed above along with a Taurus 9mm pistol that Phelps told the UC he was planning on selling to a different person in the Milwaukee area. Specifically, the firearms that the UC purchased from Phelps at the meeting on June 25, 2024, included: an Anderson Manufacturing Model AM-15, multi-caliber rifle (a 6.5 Grendel AR-style rifle), bearing serial number 20218227, for $1,100; a Sun City Machinery CO., LTD Model Stevens 320, caliber 12-gauge shotgun, bearing serial number 184374F, for $250; and Taurus Model PT111 Millennium G2, caliber: 9mm pistol, bearing serial number TKY87842, for $300. Those firearms are shown in the photographs below:



3

Anderson Manufacturing Model AM-15 rifle



Sun City Machinery CO., LTD Model Stevens 320 shotgun



Taurus Model PT111 Millennium G2 pistol

7) Also, during the meeting, Phelps stated to the UC that he personally made the 6.5 Grendel AR style rifle using an Anderson Manufacturing AM-15 lower receiver because it allows an individual to easily change the caliber. Phelps explained that he has used an identical lower receiver before to make a .50 caliber rifle. Phelps offered to change the caliber of the current rifle he was selling to the liking of the UC.

8) The UC asked if Phelps takes custom orders, and Phelps stated, "It depends on what you want" and that he is "not a dealer"; however, he has sold and/or built custom-ordered firearms to/for other individuals. Further explaining that he is working on several "custom orders" placed by other individuals, Phelps told the UC that "as of right now, I have five or six ARs that I'm building."

4

He stated that one of these builds was "for a guy" and it is a ".50 caliber." Phelps also stated he sells firearms to "a lot" of individuals in the Milwaukee and Oshkosh areas.

9) The UC showed a video to Phelps, on the UC's phone, of the UC shooting a fully automatic AR style firearm and Phelps stated, "I don't want to brag about it too much because you never know who you're talking to, but I have made a few full-autos." Phelps explained to the UC that you have to be careful on which barrel to use in building machineguns due to the heat buildup from the rapid firing of the machinegun. Phelps also went on to describe the process, saying he would "mill" a "blank" lower receiver that did not have a serial number. He explained that he did not want the machineguns he manufactured to have serial numbers on them because "even if I sell it to somebody, no matter what happens ten years from now I don't want that serial number coming back to me, you know?" Based on my training and experience, I know that a firearm's serial number can be traced back to the first purchaser of the firearm. It is common for people dealing in illicit activities involving firearms to take actions to avoid having a serial number on a firearm in order to avoid detection by law enforcement.

10) The UC asked Phelps how much he sells machineguns for, to which Phelps replied, "I've been selling them for about $1,500." The UC stated he/she would be interested in purchasing a machinegun from Phelps. Phelps agreed to meet with the UC in a couple of weeks to sell the UC a machinegun. Phelps said he believed the manufacture would not take long because he had a surplus of the parts required to make it. Phelps also offered to make a machinegun with a barrel length of 10.5" which the UC agreed to. Based on my training and experience, I know that a rifle with a barrel length of less than 16" inches is categorized under the National Firearms Act (18 U.S.C. § 5845) ("NFA")as a Short Barreled Rifle and requires a tax stamp to own, a specific NFA

5

license to manufacture and sell, and a tax stamp to transfer the ownership to another person. Based upon my review of an ATF database, I know that Phelps does not have the licenses to manufacture or deal in NFA weapons.

### Second Undercover Buy – July 10, 2024

11) On July 4, 2024, Phelps reached out to the UC again via text message, stating that the work on the machinegun was almost done. Phelps asked the UC if he/she would like a laser sight on the machinegun. The UC agreed to have the laser sight put on it. Phelps also sent the below photo to the UC to show the progress of the machinegun.



12) On July 8, 2024, the UC reached out to Phelps via text message, to schedule to meet for the machinegun sale on July 10, 2024, at the same Walmart as described above. Phelps agreed to the meeting.

13) I know that in all the text messages and phone contacts between the UC and Phelps described herein, Phelps used a phone number with a 608 area code.. According to records obtained by ATF from the phone company, that phone number listed to Phelps and was billed to a particular address in Fennimore, Wisconsin, in the Western District of Wisconsin.

6

14) On July 10, 2024, ATF SAs surveilled that Fennimore address, and at 11:00 A.M. on that date, ATF SAs observed Phelps backing up his truck out of the drive of his residence as the sole occupant of the vehicle. Shortly thereafter, PHELPS reached out to let the UC know he was headed to the Walmart.

15) During the July 10, 2024 controlled buy, the UC purchased one machinegun and two additional firearms from Phelps. Phelps explained to the UC how he made the machinegun and how he test-fired it to make sure it operated as a machinegun, firing multiple projectiles with a single trigger pull.

16) The firearms bought during the second meeting on July 10, 2024, are further described as follows: Anderson Manufacturing Model AM-15 multi caliber rifle S/N: 21152490 purchased for $1,000; Palmetto State Armory Model: PA-10 multi caliber rifle S/N: PF059046 purchased for $1,500; and a Privately Manufactured Machinegun .556 with no serial number purchased for $1,500. Pictured below in order from top to bottom:



### Third Undercover Buy – July 31, 2024

17) I know that in further communications, Phelps agreed to make the UC additional machineguns and a .50 caliber rifle. On July 31, 2024, the UC confirmed with Phelps that the firearms were ready, with the transaction set for 12:30 P.M. at the same Walmart in Delafield, Wisconsin, as the prior sales.

18) Phelps arrived at the above-mentioned Walmart at approximately 12:33 P.M. on July 31, 2024, and that he sold the UC a machinegun and a .50 caliber rifle.

19) During the deal, Phelps told the UC he has ordered 10 "lowers" to mill. Through my training and experience I know unfished lower receivers can be purchased without serial numbers on them. Because unfished lower receivers do not fall under the federal definition of a firearm, no federal firearms paperwork is required to make this type of purchase. A purchaser can then mill out the lower receivers to make them into a firearm. Phelps also told the UC that they both could make a little money when the UC sells the firearms that the UC is buying from Phelps. Phelps also told the UC that he makes the firearms in one of his workshops in a barn on his farm and in a workshop in his garage.

20) The firearms bought during the third meeting on July 31, 2024, are further described as follows: Palmetto State Armory, Model: PA-15 multi caliber rifle S/N: LW260305 purchased

for $900; and a Privately Manufactured Machinegun, caliber .223 with no serial number purchased for $1,500. Pictured below in order from top to bottom.



21) I know that the Phelps has agreed to sell the UC four (4) additional machineguns and three (3) additional rifles on August 21, 2024.

22) I know that the above-mentioned machineguns (purchased on July 10 and July 31, 2024) have been sent to the ATF lab for complete testing. However, the UC in this case is a trained ATF Special Agent who fired the weapon purchased on July 10, 2024, and noted that it fired in a fully automatic manner, discharging more than one projectile with a single pull of the trigger. Based upon that, as well as the representations of Phelps and the observed characteristics of the two weapons, your affiant believes the two above described privately manufactured weapons fit the definition of "machinegun" under 26 U.S.C. § 5845(b).

23) Lastly, I know that both the UC and your affiant observed that the barrel lengths of the two privately manufactured firearms were each significantly less than the 16 inches mandatory

9

under the National Firearms Act, meaning that Phelps' manufacture of these two weapons violated 26 U.S.C. §§ 5861(f) & 5845(a)(3).

24) Because this affidavit is offered for the limited purpose of supporting the criminal complaint and arrest warrant for Daniel Phelps, I have not set forth every fact known to me regarding this investigation. Rather, I have included only those facts which I believe establish probable cause for the criminal complaint and corresponding arrest warrant.